IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| REBECCA LYNN TAYLOR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 11-G-1205-J |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

## MEMORANDUM OPINION

The plaintiff, Rebecca Lynn Taylor, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." <u>Bloodsworth</u>, at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." <u>Bloodsworth</u>, at 1239.

### STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f). The Commissioner must determine in sequence:

(1)   whether the claimant is currently employed;

(2)   whether she has a severe impairment;

(3)   whether her impairment meets or equals one listed by the Secretary;

(4)   whether the claimant can perform her past work; and

>   (5)   whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers. Id.

In the instant case, ALJ Audrey M. Scott determined the plaintiff met the first two tests, but concluded that while the plaintiff's TMJ injury, status post multiple surgeries, headaches, degenerative disc disease, and depressive disorder with anxiety are "severe" in combination, they did not meet or medically equal a listed impairment. [R. 14]. The ALJ found the plaintiff unable to perform her past relevant work, but found that the plaintiff retains the residual functional capacity to perform a limited range of sedentary work. [R. 16]. Accordingly, the ALJ found the plaintiff was not disabled within the meaning of the Act.

## Listing 12.04, Affective Disorders

### The "A" Criteria

Listing 12.04 concerns mental disorders that are "[c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome."

The listing requires that a claimant meet a two part test.  The first part (the "A" criteria of the listing) requires "[m]edically documented persistence, either continuous or intermittent, of one of the following:

    1.  Depressive syndrome characterized by at least four of the following:

        a.  Anhedonia or pervasive loss of interest in almost all activities; or

        b.  Appetite disturbance with change in weight; or

        c.  Sleep disturbance; or

        d.  Psychomotor agitation or retardation;

        e.  Decreased energy; or

        f.  Feelings of guilt or worthlessness; or

        g.  Difficulty concentrating or thinking; or

        h.  Thoughts of suicide; or

        i.  Hallucinations, delusions, or paranoid thinking.

### The "B" Criteria

Listing 12.04 requires in addition to establishing the presence of an affective disorder, that the disorder results in functional limitations as set forth in 12.04(B) (the "B" criteria of the listing).  In order to satisfy the "B" criteria, a claimant must demonstrate that his disorder results in at least two of the following:

    1.    Marked[1] restriction of activities of daily living; or

---

[1]  For the purposes of the mental disorder listings, "marked" means "more than moderate but less than extreme."  Furthermore, a "marked limitation may arise when

(continued...)

2.  Marked difficulties in maintaining social functioning; or

3.  Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or

4.  Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).

### The "C" Criteria

Under 12.04, a claimant may also be disabled if the requirements of 12.04(C) (the "C" criteria of the listing) are met. In order to satisfy the "C" criteria, a claimant must have a medically documented history of a chronic organic mental disorder of at least two years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1.  Repeated episodes of decompensation, each of extended duration; or

2.  A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3.  Current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

---

[1] (...continued) several activities or functions are impaired or even when only one is impaired, so long as the degree of limitation is such as to seriously interfere with the ability to function independently, appropriately and effectively." 20 C.F.R. pt. 404, Subpt. P, Appendix 1, § 12.00.

**DISCUSSION**

The plaintiff was 37 years old at the time of ALJ Audrey M. Scott's decision, and alleges disability beginning July 28, 2006. The ALJ found the following severe impairments: TMJ injury, status post multiple surgeries; headaches; degenerative disc disease; and depressive disorder with anxiety. [R. 11].

The medical evidence of record shows that an MRI of the plaintiff's cervical spine from January 29, 2004, showed mild disc bulges at C3-4 and C4-5, but was otherwise normal, and no focal neural impingement or spinal stenosis was identified. [R. 169]. On August 1, 2006, she went to her treating physician, R. William Davis, M.D., complaining of neck and shoulder pain. Dr. Davis assessed chronic pain syndrome, depression and anxiety. [R. 250]. She began treatment with the Kilgo Headache Clinic in August 2008. An MRI of the brain dated August 8, 2006, was essentially normal, with "a few tiny foci of increased T2 signal in the cerebral hemispheres bilaterally, non specific." [R. 165]. A cervical spine MRI that same day showed only mild disc dessication at the mid cervical levels, with no disc herniation, central stenosis or foraminal narrowing. [R. 163-164]. A left shoulder MRI showed post-surgical changes, with supraspinatus and infraspinatus tendinosis, inflammation and mild degenerative changes. [R. 160]. She told Gary Kilgo, M.D., that she had a car accident when she was 16, and that after her baby was born in 1996, the "stress began & no sleep." [R. 151].

On September 27, 2006, she was admitted to Baptist Behavioral Health Care to detox from "poly Rx drugs due to pregnancy." [R. 645]. She also wanted help with anxiety and panic attacks, but left against medical advice after less than 12 hours.

In December 2006, she underwent TMJ arthroscopy on the left. At the time, she denied any motor, cognitive, mental or psychological disturbances. [R. 636]. On December 13, 2006, Dr. Davis noted that because of her pregnancy and fibromyalgia, he thought the plaintiff "is unable to perform her present occupation at this time. Will request a leave of absence for the patient. A note was written for her employer." [R. 245]. She had her baby and a tubal ligation in May 2007.

On June 11, 2007, she went to Boyde J. Harrison, M.D., for a consultative physical examination. Dr. Harrison noted her complaints:

> When asked why she is applying for disability, the patient states that she has fibromyalgia. She states that she has migraines and pain that goes into her jaw and shoulder. She relates this to a motor vehicle accident when she was 16 years old. Patient also states that she is postpartum having had her second child five weeks earlier. Patient states further that she has pain, which is exacerbated by activity with radiation. The pain is generalized, but there are multiple places where she hurts and increased amounts.

[R. 298]. Dr. Harrison found normal range of motion of her shoulders, elbows, and wrists. Grip strength was 4/5 bilaterally. Fine and gross manipulation was normal. She could anteriorly flex her lumbar spine to 70 degrees, and she squatted and rose with minimal difficulty. Her knees and hips flexed normally. Her cervical and lumbar spine had normal extension, side bending and rotation. Her left shoulder had a "click" on

external rotation from her previous surgery.  Cranial and peripheral nerves were intact.

Id.  His impression:

> 1)   The patient has a depressed affect and she is postpartum.  She is also already on antidepressants
>
> 2)   The patient is substantially medicated for ill defined pain
>
> 3)   The patient has a history of left sided TMJ
>
> 4)   The patient has a history of fibromyalgia symptoms
>
> ADDITIONAL STATEMENT: In my opinion, the patient would be able to perform work related activities and would benefit from this stimulation.

Id.

On June 16, 2007, the plaintiff underwent a consultative mental examination by Brian Thomas, Psy.D.:

> She is a white female of above average weight and average height being casually dressed paying adequate attention to grooming and hygiene and having unremarkable behavior and mannerisms during the examination. Speech was unremarkable.  Affect was dysphoric and mood depressed.  She has to have help to care for her child noting that she is nervous a lot of the day and is depressed because of her pain and notes that her depression has been ongoing now for about ten years or more and is marked by impaired sleep onset and maintenance, anhedonia, feelings of guilt and worthlessness, diminished energy, impaired concentration, weight fluctuation and thoughts of death though denies plan for suicide.  She notes that she is always anxious but has not specific focus of her anxiety just noting a general level of anxiety.  Sensorium was clear.  Concentration was questionable being able to do some basic mental arithmetic tasks but having difficulty spelling the word "world"backwards.  Immediate memory was impaired reciting five digits forward and three digits backward and recalling two of three words following a brief delay without assistance. Recent memory was adequate being able to recall the events completed earlier on the date of examination.  Remote memory was adequate being able to recall her own social security number.  Fund of information was

8

> adequate as she could describe similarities between items and being able to do proverb interpretation. Thought process was coherent with content being unremarkable. Hallucinations were not reported. Judgement [sic] and insight appeared adequate.

[R. 302]. His diagnostic impression was Depressive Disorder Not Otherwise Specified, Rule out Generalized Anxiety disorder and Rule out Pain Disorder Associated with Physical and Psychological Factors. [R. 303]. He made additional comments:

> A note from Dr. Davis shows the Claimant to have problems with anxiety. Another note from Dr. Davis shows an assessment of chronic pain syndrome, depression and anxiety. The reported information appears valid. Her ability to perform routine and repetitive tasks appears fair. Persistence in these activities, however, appears poor. Ability to interact with coworkers appears fair. Ability to receive supervision appears fair. Prognosis for improvement over the next twelve months appears fair especially if outpatient mental health treatment were sought. Ability to sustain attention appears fair.

Id.

Two days later, on June 18, 2007, she was admitted to Baptist Memorial Hospital in Columbus, Mississippi, after overdosing on Tylenol and benzodiazepines. "Upon arrival, the patient was adamant to leave and was put under 72 hours hold. She later stayed voluntarily." [R. 618]. She was given Effexor XR for chronic depression and anxieties, and Seroquel for chronic mood fluctuations and insomnia. "With the combination, patient improved significantly." [R. 619]. She was discharged on June 23, 2007, with the diagnoses of major depressive disorder, severe, recurrent without psychotic feature, opioid dependence, multiple personality traits (borderline/dependent), and rule out hypnotic abuse. [R. 618].

On August 17, 2007, she was taken to Fayette Medical Center for a possible overdose of pain medications.  CT and MRI scans showed no definite basis for her reported headache, and she was transferred to Northport Medical Center.  The final diagnosis was drug overdose, with symptoms completely resolved at discharge. [R. 373].

She then went to her psychiatrist, Saleem A. Ali, M.D., on August 20, 2007. Dr. Ali's diagnoses were major depressive disorder severe recurrent without psychotic features, opioid dependence in remission, and mixed personality disorder (borderline dependent).  On admission, her GAF was 35 to 40; on discharge it was 50 to 55. [R. 601].

On March 5, 2008, she saw Dr. Ali.  She denied side effects from medications, her mood was euthymic, her affect full and appropriate, her thought process logical and she denied suicidal ideations.  Dr. Ali diagnosed major depressive disorder, mild, opioid dependence in remission, mixed personality disorder (borderline/dependent), and he wanted to rule out bipolar disorder. [R. 590].  She was to return in four months. However, on March 28, 2008, she went to Marion Regional Health Center for another overdose of benzodiazepines, possibly intentional, although she told the doctor she was having a lot of neck pain but was not trying to kill herself. [R. 523].

On July 2, 2008, she returned to Dr. Ali reporting that she was doing well and denying severe depressive manic or psychotic symptoms. [R. 588].   Nonetheless, on October 12, 2008, she went to the emergency room for an overdose of Ativan and Ambien. [R. 508].  She was admitted to Baptist Memorial, saying she took a handful of the Ativan and Ambien after a fight with her husband.  Her mood and affect were

anxious, but her thought process was linear, logical and goal-directed. [R. 593]. Diagnosis was major depressive disorder, severe recurrent without psychotic features, rule out opioid dependence, rule out sedative hypnotic abuse, rule out borderline personality disorder, chronic pain, marital and financial problems, and her GAF was 45 to 50. [R. 594]. Her medications were stabilized, and she was discharged the following day.

Despite the medical evidence of record showing the plaintiff has been hospitalized for major depression and anxiety, recurrent, in September 2006, June 2007, August 2007, and October 2008, the ALJ refused to find that the plaintiff met listing 12.04(C), further stating that there were "no episodes of decompensation." [R. 15]. This finding is not supported by substantial evidence. As detailed above, the plaintiff has suffered at least four episodes of decompensation over a two-year period, each time being diagnosed with major depression, and being assessed with GAF[2] scores of less than 50.

---

[2] The Global Assessment of Functioning (GAF) Scale is used to report an individual's overall level of functioning. Diagnostic and Statistical Manual of Mental Disorders 30 (4th Edition) ("DSM-IV"). A GAF of 41-50 indicates: "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DSM-IV at 32. Several courts of appeal have, in unpublished or non-precedential opinions, considered the impact of a claimant's GAF score of 50 or below. The courts generally find that a GAF score of 50 or below is not in and off itself determinative of disability. See Hillman v.Barnhart, 48 Fed Appx. 26, 2002 WL 31260962 at * 3, n.1(3rd Cir. 2002)(not precedential)(noting that a GAF of 50 would indicate a claimant could perform some substantial gainful activity); Rutter v. Comm'r of Soc. Sec., 91 F.3d 144 (Table), 1996 WL 397424 at *2 (6th Cir. 1996)(unpublished opinion)(exclusive reliance on GAF score not appropriate); Roemmick v. Shalala, 59 F.3d 176 (Table), 1995 WL 299894 at *2, n.1 (9th Cir. 1995)(noting that an inability to work is only one example of the level of adaptation meriting a GAF of 40); Seymore v. Apfel, 131 F.3d 152 (Table), 1997 WL 7555386 at *2 (10th Cir. 1997)("Contrary to claimant's
(continued...)

Accordingly, the plaintiff meets listing 12.04(C).  Any other conclusion by the ALJ is not supported by substantial evidence.

## CONCLUSION

Therefore, the plaintiff is disabled within the meaning of the Social Security Act.  An appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

DONE and ORDERED 5 June 2012.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.

---

[2] (...continued) contention, a GAF rating of 45 may indicate problems that do not necessarily relate to the ability to hold a job; thus standing alone without further narrative explanation, the rating of 45 does not evidence an impairment seriously interfering with claimant's ability to work.); Stalvey v. Apfel, 242 F.3d 390 (Table), 2001 WL 50747 at *2 (10th Cir. 1999)("The GAF is not an absolute determiner of ability to work."). But cf. Lloyd v. Barnhart, 47 Fed. Appx. 135, 2002 WL 31111988 at *1, n.2 (3rd Cir. 2002)(not precedential)(noting that a vocational expert at the administrative hearing testified that a GAF of 50 or lower would indicate claimant would not be able to keep a job).